**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KOKIE SAIDI,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )      **Case No. CIV-26-738-J** |
| | ) |
| **TODD LYONS, et al.,** | ) |
| | ) |
| **Respondents.** | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Kokie Saidi, a noncitizen[1] and Ugandan national proceeding with counsel, filed a Verified Emergency Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Bernard M. Jones, II referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. For the reasons set forth below, the undersigned recommends the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days at which the government bears the burden of proof or otherwise to release him if there is no hearing within that time.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I.    Background

Petitioner, a citizen of Uganda, presented himself at an El Paso, Texas, border crossing seeking to apply for asylum on September 21, 2019. Pet. at 6; Resp. at 2; Doc. 8-2 at 1 (Notice to Appear). On October 10, 2019, ICE placed him into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who entered the United States without adequate documents. Resp. at 3; Doc. 8-2 at 1. On November 5, 2019, Petitioner was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d) and was released from ICE custody. Pet. at 10-11, 16. On August 12, 2020, Petitioner filed an Application for Asylum and Withholding of Removal. Resp. at 3; Doc. 8-4 (Asylum Application). Petitioner alleges he has no criminal history and has complied with the conditions of his parole since his release from ICE custody. Pet. at 11. He further alleges he has consistently attended immigration-related proceedings and made proactive, good-faith filings that demonstrate his compliance with immigration laws. *Id.* at 11-12.

On March 5, 2026, ICE re-detained Petitioner at his scheduled ICE status adjustment interview. Pet. at 10-11; Resp. at 3. Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225. Resp. at 4-5. Petitioner alleges he has been unable to obtain a custody review by an immigration judge ("IJ") because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing. Pet. at 9; Resp. at 3.

2

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 11. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Apr. 30, 2026).

## II.    Petitioner's Claims

Petitioner asserts two counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges he is not subject to mandatory detention under § 1225 because he was previously paroled under § 1182(d)(5)(A). He further alleges his detention should be governed by § 1226, which requires an opportunity for release on bond. Pet. at 28-29.

- **Count II: Violation of Due Process.** Petitioner alleges his detention violates due process because he was previously released on parole and re-detained without a pre-deprivation hearing as required by law. *Id.* at 29.

He seeks "a Writ of Habeas Corpus ordering Respondents to release [him] immediately" and requiring Respondents to hold a "pre-deprivation bond hearing" before re-detaining him. *Id.* at 30. Alternatively, he requests the Court to "order a constitutionally compliant bond hearing before an immigration judge under § 1226(a) with procedural safeguards, including placing the burden on Respondents to show why detention is necessary, retaining jurisdiction to review the determination to ensure compliance with the Court's order, and ordering Respondents to file a written status report with this Court detailing the outcome of the bond determination and the legal basis for any continued custody." *Id.* at 7, 30.

Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[2]  *Id.* at 31.

### III.   <u>Standard of Review</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.   <u>Analysis</u>

#### A.   **Section 1226(a) applies to Petitioner's detention.**

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing.  On the other hand, Section 1226(a)

---

[2] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B).  Thus, the Court need not address this request at this juncture.

more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Petitioner argues he is being held in violation of the INA because he was previously paroled, foreclosing application of § 1225(b)(1) to him. Pet. at 16-17. He also alleges he "is also not an 'arriving alien'" because he was detained in the interior after prolonged residence in the United States and, accordingly, his detention is governed by § 1226(a) rather than § 1225(b)(2). *Id*. at 17-18. Respondents maintain Petitioner is "properly detained pursuant to 8 U.S.C. § 1225," but acknowledge this Court's contrary position on the issue. Resp. at 3-4.

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. For the reasons stated below, and adopting this Court's reasoning in *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026), the undersigned recommends the Court grant the Petition in part to the extent Petitioner seeks a bond hearing under § 1226(a).

First, the INA limits the scope of the term "seeking admission" in § 1225(b)(2)(A) so that section does not apply to noncitizens already living in the United States when apprehended. Section 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Coreas*, 2026 WL 541151, at *2. "If all 'applicants for admission' are also 'seeking admission,' then

5

§ 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that make any part of the statute superfluous." *Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *2 (W.D. Okla. Nov. 26, 2025) (citation modified).   The undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry—not those like Petitioner who have resided in the United States for years and were not arrested when trying to cross the border.

In addition, the legislative history and recent amendment of § 1226 indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended.  Notably, after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Department of Justice explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination."  *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified).  Further, Congress' recent amendment to § 1226 mandating detention for certain criminal noncitizens renders Respondents' interpretation of § 1225(b)(2)(A) superfluous.

Finally, Petitioner's prior release under humanitarian parole does not impact the analysis or application of § 1226(a).  Pet. at 17.  His current detention is governed by § 1226(a) because expiration or revocation of parole under § 1182(d)(5)(A) does not convert his status to an "applicant for admission" who is "seeking admission."  This Court has previously addressed a petitioner under § 1182(d)(5)(A) and recognized "Petitioner's

detention does not arise from any ongoing entry or inspection process, but from ICE's decision to place him in removal proceedings." *Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla., Apr. 7, 2026) (citation modified). "In that posture, detention is properly understood as detention pending a decision on whether the alien is to be removed, which falls within Section 1226(a), notwithstanding Petitioner's initial classification at the time of entry." *Id*. (citation modified); *see also id.* (rejecting Respondents' argument that issuing a Notice to Appear to petitioner terminated parole under § 1182(d)(5)(A) and reverted his status "to that of any ordinary applicant for admission"); *Rafibaev v. Noem,* No. 26-CV-00461, 2026 WL 607559, at *4 (D. Colo. Mar. 4, 2026) (finding termination of petitioner's parole did not render him an applicant seeking admission) (collecting cases); *Sukuev v. Grant*, No. 26-532-SLP, Doc. 15 at 7-9 (W.D. Okla. Apr. 13, 2026) (R&R) (collecting cases). *But see Arevalo Castillo v. Figueroa*, No. CIV-26-162-HE, Doc. 13 at 11-14 (W.D. Okla. Apr. 20, 2026) (R&R) (recommending application of § 1225 to govern detention of habeas petitioner previously released under § 1182(d)(5) humanitarian parole).

In sum, this Court, Chief Judge Palk, Judge DeGiusti, Judge Russell, Judge Heaton, and myriad district courts have recently applied § 1226(a) to govern detention of noncitizens like Petitioner.[3] This conclusion is also in accord with the Second and Seventh

---

[3] *See, e.g., Coreas*, 2026 WL 541151, at *2; *Lopez v. Corecivic Cimarron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *1 (W.D. Okla. Jan. 21, 2026); *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Valdez v. Holt,* No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025); *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025). Two

Circuits, which rejected the statutory interpretation of § 1225(b)(2) as urged by Respondents. *See Cunha v. Freden*, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). *But see Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026) (agreeing with Respondents' interpretation); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501-08 (5th Cir. 2026) (same).

The undersigned agrees with this Court's reasoning, the majority of Judges in this District, and the great weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A). *See Coreas*, 2026 WL 541151, at *2 (finding § 1226(a) governs a similarly situated petitioner's detention and "agree[ing] with the Seventh Circuit's reasoning, the majority of the other courts in this district, the overwhelming number of other courts that recently addressed this question, and this Court's prior rulings");[4] *accord Puentes-Puentes v. Grant*, No. CIV-26-192-J, 2026 WL 657199, at *2 (W.D. Okla. Mar. 9, 2026) (concluding "unless the Tenth Circuit and/or Supreme Court hold differently, the matter is well settled in this Court and further discussion is unwarranted" (citation modified)).

---

Judges in the District have applied § 1225(b)(2)(A) to a similarly situated petitioner. *See Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *12 (W.D. Okla. Dec. 26, 2025).

[4] Indeed, on April 28, 2026, a Second Circuit panel unanimously held § 1226 applies to noncitizens similarly situated to Petitioner. *Da Cunha*, 2026 WL 1146044, at *4 (agreeing with the Seventh Circuit and the majority of district courts and finding the analysis in *Avila* and *Buenrostro-Mendez* "unpersuasive").

Accordingly, the undersigned recommends the Court apply § 1226(a) to govern Petitioner's current detention. The Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) before a neutral IJ within five business days or otherwise release him if he does not have a lawful bond hearing within that period.

**B.    Due Process also entitles Petitioner to a bond hearing.**[5]

Petitioner also alleges he has acquired a protected liberty interest based on his previous parole and residence in the United States, and therefore his continued detention without adequate processes or an individualized hearing violates his due process rights. Pet. at 19-25. As separate grounds for reaching a bond hearing, the undersigned concludes that because § 1226(a) applies to Petitioner's detention, he is owed the due process provided under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S.

---

[5] The undersigned acknowledges this Court's recent Orders in *Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1-2 (W.D. Okla. Apr. 16, 2026) and *Batista Ronda v. Figueroa*, No. CIV-26-565-J, 2026 WL 1146026, at *2 (W.D. Okla. Apr. 28, 2026), declining to reach similar due process issues and concluding burden shifting to the government in a § 1226(a) bond hearing is premature and not ripe for adjudication before a bond hearing has been conducted. The undersigned respectfully continues to recommend the government bear the burden of proof at a bond hearing based on due process and the particular circumstances of Petitioner's case.

Const. Amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It

10

does not eliminate Petitioner's significant interest in being free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)). The undersigned is not persuaded by Respondents' argument that "Petitioner ultimately has the power to free himself," Resp. at 7, by leaving the country, especially with a pending asylum claim.

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford Petitioner no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest.").

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459

11

U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation. *See Montero Cordova*, 2026 WL 867689, at \*10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at \*6 (W.D. Tex. Mar. 6, 2026). Significantly, Petitioner has had no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk since his re-detention. Further, the fact Petitioner has been living in the United States for more than six years with no criminal history and was re-detained while at an ICE facility for a scheduled immigration interview weighs in his favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at \*5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)). Finally, the undersigned is not persuaded by Respondents' assertion that granting Petitioner a bond hearing "would compel a change

12

in policy and procedures with associated burdens on the Immigration Court system, [the Department of Homeland Security], and ICE." Resp. at 8. Noncitizens similarly situated to Petitioner were routinely provided bond hearings under § 1226(a) for decades before last year's policy change.

Accordingly, in addition to the INA violation, Petitioner's continued detention without a bond hearing violates his due process liberty interests, and he is entitled to a prompt bond hearing before an immigration judge.

> **C.    The Court should order the government to bear the burden of proof at Petitioner's bond hearing.**

Petitioner further asserts due process requires that he receive "a bond hearing in which the government bears the burden of justifying his continued detention and the IJ considers his ability to pay and alternatives to detention when setting any bond amount." Pet. at 25. A noncitizen generally has the burden at a bond hearing to show his "release would not pose a danger to property or persons" and he "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

As discussed above, the Court should grant habeas relief in part and grant Petitioner a bond hearing because his detention is governed by § 1226(a) and due process requires it. As for the burden of proof at a bond hearing, the Court should adopt the approach of other courts in the Tenth Circuit and nationwide and use the *Mathews* balancing test to assess "the type of process required in a given case." *Vizguerra-Ramirez v. Baltazar*, No. 25-CV-00881, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025); *see also, e.g.*, *Velasquez Salazar*, 806 F. Supp. 3d at 1245 (holding the *Mathews* framework supports shifting the

13

burden at a § 1226 bond hearing to the government); *Hernandez-Lara*, 10 F.4th at 39 (holding the government bears the burden at a bond hearing after prolonged detention under § 1226(a)); *Velasco Lopez,* 978 F.3d at 854 (same).  *But see Miranda v. Garland*, 34 F.4th 338, 358-65 (4th Cir. 2022) (applying *Mathews* to conclude due process does not require the government to bear the burden at a § 1226(a) bond hearing for a noncitizen whose detention is not "indefinite and potentially permanent").

Under the circumstances presented here, the undersigned concludes all three *Mathews* factors favor Petitioner and placing the burden of proof on the government at any bond hearing under § 1226(a).  First, as discussed above, Petitioner has a fundamental interest in liberty and being free from official restraint.  *See Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1283 (D.N.M. 2026) (finding the first *Mathews* factors weighs in favor of the government bearing the burden of proof because "being free from detention is the most elemental of liberty interests" (citation modified)).  Accordingly, the first *Mathews* factor favors Petitioner.

Second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" also favor Petitioner.  *Mathews*, 424 U.S. at 335.  Notably, requiring Petitioner to bear the burden of proof creates a risk of an erroneous deprivation where Respondents re-detained him without any alleged violation of law or conditions of release.  Petitioner had been released from ICE custody, lived in the country for more than six years, complied with all immigration requirements, and had no criminal history.  *See* Pet. at 11-12.  ICE's decision to change course, re-detain Petitioner, and deprive him of physical liberty without changed

14

circumstances or reason for re-detention weighs in Petitioner's favor. *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the "risk is even more pronounced" where petitioner had been released on bond previously and requiring the government to justify detention "reduces the risk of an ongoing and erroneous deprivation of Petitioner's liberty"); *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *4 (D. Colo. Sep. 16, 2025) (finding "a severe risk of erroneous deprivation" based in part on respondents' "failure to identify any criminal record or conviction Petitioner has incurred").

Additionally, assigning the burden of proof to Petitioner puts him in a "difficult" position of "proving a negative," *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183-84 (D. Colo. 2024)—specifically, proving he is neither a flight risk nor a danger to the community despite his more than six years of apparent compliance with the law and any ICE conditions. To the extent the government may contend risk factors warrant Petitioner's continued detention, the information establishing those risks is likely within the government's possession. *Accord Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4 (W.D. Okla. Feb. 20, 2026) (noting information justifying a noncitizen's re-detention would be contained in the government's own files rather than in the possession of a petitioner detained in ICE custody). Thus, requiring the government to bear the burden of proof for Petitioner's continued detention helps to cure "the risk of an erroneous deprivation," *Mathews*, 424 U.S. at 335, of his liberty interests after the government's unilateral decision to re-detain him. The second *Mathews* factor favors Petitioner.

Finally, "the administrative burden of a bond hearing is minimal." *Arostegui-Maldonado*, 794 F. Supp. 3d at 943. Having determined a bond hearing must be held, any

15

additional costs from shifting the burden of proof to the government are negligible.  Placing the burden of proof on the government promotes the government's interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.   Moreover, the government has not alleged or demonstrated any changed circumstances since Petitioner's previous release in November 2019 to support his recent re-detention.  *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the third factor supports shifting the burden to the government because "the Government has not demonstrated any change in circumstances" since petitioner's prior release on bond).

In sum, all three *Mathews* factors support shifting the burden of proof at Petitioner's bond hearing to the government.  The undersigned acknowledges that due process may not require this result in all cases.  *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (recognizing habeas corpus as "an adaptable remedy" where the "precise application and scope" can "change[] depending upon the circumstances").  But in cases like this, where Petitioner was previously released years ago and ICE re-detained him without any allegation that he violated the law or conditions of release, the burden should be shifted to the government at a bond hearing to justify his continued detention.  *See Mieles-Parraga v. Bondi,* No. 26-CV-00646, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *Abanil v. Baltazar*, No. 25-CV-4029, --- F. Supp. 3d ---, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (holding "the weight of authority in this District is clear: it is the Government's burden to justify a noncitizens continued detention at a bond hearing" (citation modified)); *Requejo Roman*, 816 F. Supp.

16

3d at 1282-84 (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *see also, e.g., Singh v. Grant*, No. CIV-26-88-G, Doc. 14 at 17-22 (W.D. Okla. Mar. 30, 2026) (R&R) (Judge Maxfield recently recommending the same); *Drozdov v. Lyons*, No. CIV-26-365-SLP, Doc. 12 at 13-19 (W.D Okla. Apr. 3, 2026) (R&R) (the undersigned recommending the same).

The Court should also follow other district judges in this Circuit concluding the government must prove Petitioner is a flight risk or danger to the community by clear and convincing evidence. *See Requejo Roman*, 816 F. Supp. 3d at 1284 (holding "the standard of proof the Government must meet is one of clear and convincing evidence" (citation modified)); *Vizguerra-Ramirez*, 2025 WL 3653158, at *16 (applying § 1226(a) to a similarly situated petitioner and ordering a bond hearing at which "the Government must prove by clear and convincing evidence that [she] is either a flight risk or a danger to the community in order to justify continued detention"); *L.G.*, 744 F. Supp. 3d at 1186 ("In sum, in order to continue detaining Petitioner under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence."); *see also, e.g., Singh v. Grant*, No. CIV-26-88-G, Doc. 14 at 17-22 (W.D. Okla. Mar. 30, 2026) (R&R) (Judge Maxfield recommending the same); *Drozdov v. Lyons*, No. CIV-26-365-SLP, Doc. 12 at 13-19 (W.D Okla. Apr. 3, 2026) (R&R) (the undersigned recommending the same).

This approach is consistent with other contexts where the government must justify a person's detention by clear and convincing evidence to meet due process demands. *See,*

17

*e.g.*, *Foucha*, 504 U.S. at 86 (confinement of "insanity acquittees who are no longer mentally ill"); *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (termination of parental rights); *Addington v. Texas*, 441 U.S. 418, 432-33 (1979) (involuntary civil commitment proceedings to a mental hospital); *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 286 (1966) (deportation of a noncitizen); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization of an individual).

In coming to this recommendation, the undersigned has considered the burden of proof applicable to the government for pre-trial detention of a criminal defendant under the Bail Reform Act. In that context, "the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citation modified); *see, e.g.*, *Garcia v. Bondi*, No. 26-CV-01012, 2026 WL 835766, at *4 (D. Colo. Mar. 26, 2026) (applying burden of proof from criminal pre-trial detention to immigration habeas proceedings and "finding no persuasive justification to conclude that a noncitizen must face different standards for the same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry" (citation modified)). The undersigned has also considered the approach akin to Judge Mitchell's recent Reports and Recommendations, where she concluded after review of the *Mathews* factors that a similarly situated petitioner should be immediately released and not re-detained without a pre-deprivation hearing. *See, e.g., Rodriguez-Navarrete v. Mullin*, No. CIV-26-224-SLP, Doc. 11, at 14-17 (W.D. Okla. Apr. 3, 2026) (R&R).

The undersigned is persuaded after a careful *Mathews* analysis to recommend the predominant view from judges in this Circuit—that a detainee like Petitioner is entitled to a § 1226(a) bond hearing where the government bears the burden of proof by clear and convincing evidence for his continued detention. Accordingly, at Petitioner's bond hearing, the government should bear the burden to prove by clear and convincing evidence that he is either a flight risk or a danger to the community to justify continued detention.

## V.      Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner within five business day a bond hearing under 8 U.S.C. § 1226(a) at which the government bears the burden of proof or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends the Court require the government to bear the burden at any bond hearing to prove by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community to justify continued detention. Finally, the Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **May 7, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **May 12, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and

legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 30th day of April, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE